UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN AMIR LEWIS,<br>Plaintiff,<br>v.<br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al.,<br>Defendants. | Case No. 26-cv-11028-HSG<br>**ORDER DENYING MOTIONS FOR LEAVE TO SEEK RECONSIDERATION; GRANTING IN PART AND DENYING IN PART MOTION TO PROCEED IN FORMA PAUPERIS; TERMINATING AS MOOT EMERGENCY MOTIONS TO SHORTEN TIME**<br>Re: Dkt. Nos. 19–23 |

Pending before the Court are Plaintiff Jordan Amir Lewis's motions: (1) for leave to seek reconsideration of the Court's denial of his motion for a temporary restraining order, Dkt. Nos. 3 ("TRO Mot."), 16 ("TRO Denial"), pursuant to Northern District of California Civil Local Rule 7-9, Dkt. Nos. 21 ("Recon. Mot."),[1] 23 ("Omnibus Mot.);[2] (2) to shorten the time for consideration of that motion to November 9, 2026, Dkt. No. 22 ("Time Mot."); Omnibus Mot.; and (3) to proceed *in forma pauperis* after the Court denied his initial application, Dkt. Nos. 2, 18 ("IFP Denial"), 19–20 ("IFP Mot.").

[1] Plaintiff filed this document without docketing it as a motion. However, the caption of the document indicates that the filing is a "Proposed Amended Memorandum in Support of Request for Leave to Seek Reconsideration of Docket No. 16," Dkt. No. 21 at 1, which is the Court's denial of his request for a temporary restraining order, TRO Denial. Given Plaintiff's *pro se* status, the Court liberally construes this as a motion for leave to seek reconsideration under Civ. L.R. 7–9.

[2] Plaintiff filed a second omnibus motion for leave to seek reconsideration and motion to shorten time. *Compare* Dkt. No. 23 *with* Dkt. Nos. 21–22. This conduct is prohibited by Local Rule 7-2(b): Parties are allowed to file only one brief per stage of a motion. To that end, the Court entered an Order prohibiting Plaintiff from filing "anything further on the docket until the Court has ruled on the pending motions." Dkt. No. 24. The Court cautions Plaintiff that it will strike any further uncompliant filings moving forward, and that he must comply with the rules governing this case.

United States District Court
Northern District of California

United States District Court
Northern District of California

These motions are **GRANTED IN PART**, **DENIED IN PART**, and **TERMINATED AS MOOT** as detailed below.

## I. BACKGROUND

Plaintiff seeks a mandatory injunction compelling Defendants[3] to allow him to participate in Division 1 baseball with Defendant University of San Francisco while the Court considers Plaintiff's challenge to his ineligibility determination. TRO Mot. at 1; *see* Dkt. No. 1 ("Compl.") ¶¶ 1–4, 33, Section VII. Plaintiff brings his first count under Section 1 of the Sherman Act, 15 U.S.C. § 1, and his second count sounds in California contract law. Compl. ¶¶ 29–39. This Court's subject matter jurisdiction is based on the alleged federal question with respect to Plaintiff's Section 1 claim, and Congress's discretionary grant of supplemental jurisdiction over pendent state law claims. *Id.* ¶¶ 11–13 (citing 28 U.S.C. §§ 1331, 1367) (citations omitted).

The day this case and the TRO Motion were reassigned to the undersigned, the Court issued an order directing Plaintiff to serve Defendants via email with the Complaint, Plaintiff's TRO Motion and supportive documents, and the Court's Order declining to rule on the TRO without notice to Defendants and an opportunity for them to be heard under Federal Rule of Civil Procedure 65(b)(1). Dkt. No. 11 ("TRO Serv. Order") at 1. Defendant National Collegiate Athletic Association filed an opposition, and the University of San Francisco did not. Dkt. No. 14. Plaintiff did not file a reply. *See* TRO Serv. Order at 1.[4] The matter was deemed submitted pursuant to Local Rule 7-1(b). *Id.*

The Court denied Plaintiff's motion for a TRO, holding that Plaintiff had neither shown a clear likelihood of success on the merits, nor raised serious questions concerning his Section 1

---

[3] Defendants listed on Plaintiff's Complaint are: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; and UNIVERSITY OF SAN FRANCISCO. Dkt. No. 1 ¶¶ 9–10.

[4] Plaintiff filed a "Supplemental Declaration of Jordan Amir Lewis in Support of Emergency Motion for Temporary Restraining Order" at 11:19 p.m. on Monday, October 5, 2026. Dkt. No. 17. The Declaration purports to attach "Exhibit A," but there is no attachment on the public docket. *Id.* at ¶ 3. Plaintiff's filing failed to comply with this Court's Order requiring that any reply by Plaintiff regarding the TRO be filed by 3:00 p.m. on October 5th. TRO Serv. Order at 1. The Court notes that even having considered the Declaration, it does not change the Court's TRO analysis or the analysis for this Order. The Court cautions Plaintiff that it will strike any further uncompliant filings moving forward, and that he must comply with the rules governing this case.

claim.[5] TRO Denial at 1–4.

Plaintiff moves for leave to seek reconsideration on an expedited basis because Plaintiff avers that in order to play this season, he must be listed on an NCAA roster that will become final on December 1, 2026. Omnibus Mot. at 1.

## II. LEGAL STANDARDS

### a. Civ. L.R. 7-9(a) Reconsideration

The Northern District of California requires a party to seek leave of court before moving for reconsideration. That rule provides:

> Before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L.R. 7-9(b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.

Civ. L.R. 7-9(a).

### b. Rule 65 Preliminary Relief

Injunctive relief is a matter of equitable discretion and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24, 32 (2008) (citation omitted); Fed. R. Civ. P. 65. The standard for issuing a temporary restraining order is "substantially identical" to the rule for granting a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). A "TRO should be restricted to preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (internal quotations omitted) (cleaned up).

A mandatory injunction is "doubly demanding." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Issuing a "mandatory preliminary injunction requires more than a possible or fairly debatable claim." *Id.* at 744. Instead, it requires a showing that the law "clearly favor[s]"

---

[5] The Court declined at the TRO stage to consider the likelihood of success on the merits of Plaintiff's state law claim. TRO Denial at 2 n.2; *see* discussion at pages 9–10 of this Order.



United States District Court
Northern District of California

the party requesting the mandatory injunction. *Id.* (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)).

Temporary restraining orders may only issue where the moving party has clearly shown: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20, 22 (citations omitted). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quotation omitted). "If a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (internal quotations omitted) (cleaned up).

**c. 28 U.S.C. § 1915 Screening**

The Court may authorize the commencement of a civil action *in forma pauperis* if the Court is satisfied that the would-be litigant cannot pay the filing fees necessary to pursue the action and that the complaint states a claim on which relief may be granted. 28 U.S.C. § 1915(a)(1), (e)(2); *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).

"The right to proceed without prepayment of fees in a civil case is a privilege and not a right." *Elmer v. Comm'r of Soc. Sec.*, No. 22-cv-01045-AWI (SAB), 2022 WL 5237463, at *1 (E.D. Cal. Sept. 21, 2022) (citation omitted), *R&R adopted* 2022 WL 9452375 (E.D. Cal. Oct. 14, 2022). "In order to proceed in court without prepayment of the filing fee, a plaintiff must submit an affidavit demonstrating that he 'is unable to pay such fees or give security therefor.'" *Id.* (quoting 28 U.S.C. § 1915(a)(1)).

If the Court determines that the complaint "fails to state a claim on which relief may be granted," it "shall" dismiss the case. 28 U.S.C. § 1915(e)(2)(B)(ii); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal

Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted).

Rule 12(b)(6) motions to dismiss challenge the adequacy of a plaintiff's pleadings. Rule 8(a)(2) requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (quotation omitted). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to" the plaintiff, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted), but do not accept the complaint's "legal conclusions" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Iqbal*, 556 U.S. at 678–79; *Khoja*, 899 F.3d at 1008 (quotation omitted). Because Plaintiff is *pro se*, the Court liberally construes the complaint. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## III. DISCUSSION

### a. Civ. L.R. 7-9(a) Leave for Reconsideration.

Plaintiff has not shown that reconsideration is warranted under the Civil Local Rule 7-9(a) test.

As this Court explained in the TRO Denial, Plaintiff's Section 1 claim faces serious headwinds in light of recent and directly relevant Ninth Circuit authority. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Despite its absolute terms, only "unreasonable" restraints of trade are unlawful. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Generally, a "three-step, burden-shifting framework" applies to Section 1 claims to "distinguish[]

between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Blythe v. NCAA*, 190 F.4th 857, 863 (9th Cir. 2026) (quoting *NCAA v. Alston*, 594 U.S. 69, 96 (2021)), *explaining* No. 26-1106, 2026 WL 2494580 (9th Cir. Apr. 8, 2026). For that first step, "[t]he plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Blythe*, 190 F.4th at 863 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 541–42 (2018)). As a part of this showing, a plaintiff must allege and the court must define the relevant market to be able to "assess whether a rule has an anticompetitive effect." *Blythe*, 190 F.4th at 863–64 (quotations omitted). Without doing so, "there is no way to measure the defendant's ability to lessen or destroy competition." *Am. Express*, 585 U.S. at 543 (cleaned up). The relevant market is "the area of effective competition, meaning the arena within which significant substitution in consumption or production occurs." *Blythe*, 190 F.4th at 864 (internal quotations omitted). "In the labor market context, as here, the market is comprised of those employers seen by workers as reasonably good substitutes." *Id.* (quotation omitted).

In *Blythe*, the court held that a college baseball player like Plaintiff failed to clearly establish a likelihood of success on the merits of his Section 1 claim and vacated a preliminary injunction. 190 F.4th at 859. Though Plaintiff is correct that the court held that the NCAA's Five-in-Five Rule is a commercial restraint subject to the federal antitrust laws, *id.* at 861–62; Compl. ¶ 31; TRO Mot. at 2–3, that was just a threshold issue related to the question of applying federal antitrust law to the conduct at issue and was not the court's relevant holding for the purposes of this case.

The Ninth Circuit held that the *Blythe* plaintiff failed to introduce evidence of market definition, and that the trial court in turn misdefined the relevant market. 190 F.4th at 863–66. As his TRO Motion conceded, Plaintiff "must do more than show that the rule affects him; the antitrust market and competitive effects showing must be legally and factually supported. This section must be reviewed before filing."[6] TRO Mot. at 3. But unlike the at least "paltry" evidence

---

[6] The Court noted in its TRO Denial that this last sentence from Plaintiff's moving papers may reflect that this filing was generated in part by an AI tool. TRO Denial at 4 n.3. This appears



United States District Court
Northern District of California

offered in *Blythe*, the TRO Motion and Complaint provide no factual pleadings or evidence regarding market definition to demonstrate a clear likelihood of success on the merits, or serious questions regarding them. *Compare* 190 F.4th at 863–66 *with* TRO Mot. & Compl. *passim*.

In addition, as in *Blythe*, Plaintiff in this case "provided no evidence beyond his own personal exclusion from that market to support his claim" of "a substantial anticompetitive effect" in the (undefined) market. *Compare* 190 F.4th at 866–67 *with* TRO Mot. & Compl. *passim*. As the Seventh Circuit has explained, that is insufficient under the federal antitrust laws because Plaintiff "is not a rival of the NCAA, and he has not drawn a link from his exclusion to an adverse effect on an existing or potential rival of the NCAA." *Fourqurean v. NCAA*, 143 F.4th 859, 870 (2025) (citation omitted).

Nothing in Plaintiff's additional filings changes this analysis for purposes of assessing his motion for leave under Civil Local Rule 7-9(a).

To begin, Plaintiff functionally acknowledges again that he has not cured the defects identified in the Court's TRO Denial: "Jordan expressly recognizes that neither his Class-of-2022 status nor the USF email, without more, cure these defects." Recon. Mot. at 2. Further, "Plaintiff acknowledges that" his purported evidence "regarding an eligibility interpretation does not, by itself, prove a Sherman Act Section 1 violation, define an antitrust market, establish market-wide anticompetitive effects, or satisfy the legal deficiencies identified by the Court in Docket No. 16." *Id.* at 5. Finally, Plaintiff acknowledges that the roster deadline and his IFP evidence do not "establish a relevant antitrust labor market or market-wide competitive effects." Omnibus Mot. at 1. Plaintiff has not introduced additional *evidence* that would affect the Court's TRO analysis with respect to his failure to demonstrate a likelihood of success on the merits or raise serious questions concerning his Section 1 claim, and he is still not entitled to a TRO on this record.

At bottom, what Plaintiff is really asking this Court to do is to bypass whether there is a valid Section 1 theory and instead consider the substantive issue of his NCAA eligibility. Plaintiff

---

to have continued. *See* Recon. Mot. at 1, 3; Time Mot. at 1. The Court reminds Plaintiff again that he must ensure that all filings comply with his obligations under Federal Rule of Civil Procedure 11.

argues that he is "within the cohort at issue in recent five-in-five eligibility litigation" and asks the Court to "compare the actual controlling criteria—graduation date, first collegiate enrollment and competition, seasons of participation, use of any redshirt or waiver, applicable transition language, and the scope of any injunctions—to his certified NCAA participation history." Recon Mot. at 1. He also notes that he was purportedly told that he would be able to compete by Athletic Compliance Officer Michael Cosgrove. *Id.* But that is not how federal courts work. The problem is that all of this is irrelevant to whether Plaintiff has provided evidence clearly demonstrating his entitlement to extraordinary mandatory preliminary injunctive relief based on his Section 1 claim under the federal antitrust laws. Article III courts have "limited jurisdiction" and must presume "that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court may only rule on the merits of a claim properly before the Court.

A California state court case being decided on *state law theories* has no bearing on whether Plaintiff in this case is likely to succeed on the merits of his *federal antitrust Section 1 claim*. Recon. Mot. at 2 (citing *Glancey v. NCAA*, No. 26-cv-498334, Dkt. No. 11 (Cal. Super. Ct. Santa Clara Cnty. Aug. 18, 2026)). The claims in *Glancey*, for example, arise exclusively under California state law with respect to breach of contract and unfair competition based on how the NCAA is implementing the Five-in-Five Rule—*i.e.*, not a federal antitrust claim. *See Glancey*, No. 26-cv-498334, Dkt. No. 7 ¶¶ 154–183. In a state court where there is no federal law claim, *i.e. Glancey*, that court may proceed directly to assessing the underlying state law claims (such as Plaintiff's second count). But here in federal court, Plaintiff's case faces the significant threshold problem that to be entitled to any preliminary injunctive relief, he must plead a viable federal antitrust claim, because without that there is no original jurisdiction basis for this case to be in this court.

*Glancey* is therefore not "pertinent to uniform interpretation and comparative treatment" because that is not an element of Plaintiff's *Section 1 claim*. *Cf.* Recon. Mot. at 2. Neither does the non-binding decision by a district court outside of this circuit regarding a different complaint and record in *Lorient v. NCAA* counsel in favor of deviating from a controlling case from the

Ninth Circuit addressing a complaint and TRO motion analogous to this case. *Cf.* Omnibus Mot. at 2 (citing No. 26-cv-00094-JPB, 2026 WL 2958759, at *8–24 (N.D. W.Va. Sept. 30, 2026)); *accord* Recon. Mot. at 2 (*citing Wisne v. NCAA*, No. 26-cv-03063-CNS (KAS), 2026 WL 2214234 (D. Colo. July 31, 2026), *stayed on appeal* No. 26-1309, Dkt. No. 28 (10th Cir. Aug. 21, 2026)). In any event, these decisions were all issued before Plaintiff's reply in support of his TRO was due on November 5th at 3:00 p.m. TRO Serv. Order at 1. Plaintiff has failed to "show that in the exercise of reasonable diligence the party applying for reconsideration did not know of such . . . law at the time of the interlocutory order" or that these opinions constitute "a change of law occurring after the time of such order." Civ. L.R. 7-9(b)(1)–(2).

Relatedly, the Court will not pass on Plaintiff's newly-proffered purported evidence, including regarding the alleged market definition, which is not properly before the Court in any event. Omnibus Mot. at 2–4. These proffered facts are clearly not newly existing or newly discovered evidence that, with reasonable diligence, could not have been uncovered before filing the TRO Motion. Civ. L.R. 7-9(b)(1)–(2).

Without a clear showing of entitlement to preliminary injunctive relief or serious questions as to Plaintiff's federal claim, the Court again declines to consider the plausibility of Plaintiff's state law claim before Plaintiff has pled a viable claim within the Court's original jurisdiction. 28 U.S.C. § 1367(c)(3). This case arises from this Court's federal question subject matter jurisdiction with respect to Plaintiff's Section 1 claim, and Congress's discretionary grant of supplemental jurisdiction over pendent state law claims. Compl. ¶¶ 11–13 (citing 28 U.S.C. §§ 1331, 1367) (citations omitted). The Ninth Circuit has confirmed that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quotation omitted); *see Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 804–06 (9th Cir. 2001) (explaining the difference between Title 28 U.S. Code Section 1367(a) and (c)); *Lux v. Harjot Trucking, Inc.*, No. 26-cv-04683-BLF, 2026 WL 2137344, at *3–4 (N.D. Cal. July 23, 2026) (denying request for a TRO regarding pendent

state law claims after finding no viable federal claims to ground original subject matter jurisdiction and declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(3)), *on appeal on other grounds* No. 26-5044, Dkt. No. 3.1 at 24–25 (9th Cir. Sept. 15, 2026). There is no good cause here to deviate from that default rule.

The Court **DENIES** Plaintiff's motion for leave to seek reconsideration, Dkt. Nos. 21, 23, and **TERMINATES AS MOOT** Plaintiff's motions for emergency consideration, Dkt. Nos. 22, 23.

**b. *In Forma Pauperis* Filing Status.**

Plaintiff has shown that he qualifies for *in forma pauperis* filing status in his renewed application. The Court originally denied Plaintiff's application as incomplete and possibly inaccurate. IFP Denial at 1–3. Plaintiff's refiling demonstrates that neither he nor his family can reasonably pay the filing fee at this time. IFP Mot. *In forma pauperis* filing status is **GRANTED**.

**c. 28 U.S.C. § 1915 Screening.**

For the same reasons that Plaintiff has not demonstrated a clear likelihood of success on the merits of his Section 1 claim for the purposes of entitlement to a TRO, the Court dismisses the Complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

A Section 1915 screening differs from a TRO analysis in that the inquiry is limited to the complaint itself rather than a plaintiff's complaint in conjunction with their TRO evidence, and the plaintiff is required to plausibly allege a claim under Rule 12(b)(6) rather than establish a clear likelihood of success. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d at 1112; *Barren*, 152 F.3d at 1194. But the outcome of the analysis here is the same: Plaintiff's threadbare recitation of legal elements without factual pleadings as to the essential elements of his Section 1 claim is insufficient to state a claim for relief.

The Complaint "fall[s] far short" and does not plausibly plead factual material regarding a specific market definition, and essentially tracks the market definition of "Division I collegiate baseball labor market" rejected by the Ninth Circuit. *Compare Blythe*, 190 F.4th at 863–66 (citing

*Alston*, 594 U.S. at 93; *Am. Express*, 585 U.S. at 541) *with* Compl. *passim*, ¶¶ 30, 32–33.[7] The Complaint also fails to plausibly allege anything "beyond [Plaintiff's] own personal exclusion from that market to support his claim" of "a substantial anticompetitive effect" in the (undefined) market. *Compare Blythe*, 190 F.4th at 866–67 (citing *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 985 (9th Cir. 2023)) *with* Compl. ¶¶ 1, 3–4, 7, 19, 22, 25–28, 33, 38.

The Complaint is therefore **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii).

As a general rule, leave to amend a complaint that has been dismissed is freely granted. Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied when the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted). Given the serious defects that the Court has identified in both this Order and the TRO Denial, the Court has significant skepticism that Plaintiff will be able to plead new facts that change the analysis. Nevertheless, Plaintiff has requested leave to amend, Recon. Mot. at 2, and consistent with *Lopez* the Court **GRANTS LEAVE TO AMEND**. Any amended complaint must be filed by November 20, 2026, and must remedy the deficiencies identified in this Order and the TRO Denial.

While the Court may not and does not give Plaintiff legal advice, and without passing on the procedural or substantive viability of any factual or legal claims, the Court observes that Plaintiff has cited a number of state court cases—including in the California state courts—which, in Plaintiff's reading, have granted the relief he seeks to purportedly similarly situated plaintiffs. *See, e.g.*, Recon. Mot. at 2 (citing *Glancey*, No. 26-cv-498334, Dkt. No. 11);[8] TRO Mot. at 3 (citing *Daley v. NCAA*, No. 53C06-2609-PL-002418, Dkt. No. 38 (Ind. Cir. Ct. Monroe Cnty. Sept. 23, 2026)). The state courts that issued those decisions are not subject to the jurisdictional requirements that apply in this federal court, and those cases addressed only state laws. This

---

[7] Even though *Blythe* addressed the sufficiency of the plaintiff's evidentiary showing at the preliminary injunction stage, the Ninth Circuit's description of the shortcomings in the plaintiff's case there and the legal requirements of a Section 1 claim generally both inform the Court's assessment of what is missing from the Complaint here. 190 F.4th at 859, 861–67.

[8] The Court notes that the *Glancey* decision was issued by a California Superior Court, which are the state's trial-level courts.

Court has concluded that there is no plausibly pled Section 1 claim based on Plaintiff's Complaint, which means that the Court will not exercise supplemental jurisdiction over Plaintiff's pendent state law claim concerning the NCAA Five-in-Five Rule unless and until Plaintiff can plead a viable federal claim. Thus, Plaintiff may wish to consider pursuing his standalone state law claim in a state court of competent unlimited general jurisdiction, as happened in the state cases he has cited.

## IV. CONCLUSION

Consistent with this Order, the Court: (1) **DENIES** Plaintiff's motions for leave to seek reconsideration of the Court's denial of his request for a temporary restraining order, Dkt. Nos. 21, 23; (2) **TERMINATES AS MOOT** Plaintiff's motions to shorten the time for consideration of the same, Dkt. Nos. 22, 23; and (3) **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to proceed *in forma pauperis*, Dkt. No. 20. If Plaintiff chooses to file an amended complaint, he must do so by November 20, 2026. If Plaintiff does not file an amended complaint by this deadline, the case may be dismissed without further notice for failure to prosecute.

**IS SO ORDERED.**

Dated: November 6, 2026

Haywood S. Gill Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California